**Donald F. TACKITT,
Plaintiff-Appellant,**

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA, United States of America, and Special Agents Mutual Benefit Association, Inc., Defendants-Appellees.**

No. 84–8887.

United States Court of Appeals,
Eleventh Circuit.

April 30, 1985.

Thomas W. Thrash, Atlanta, Ga., for plaintiff-appellant.

Ben Kingree, Anthony J. McGinley, Atlanta, Ga., for Prudential Ins. Co. of America.

Myles E. Eastwood, Asst. U.S. Atty., Atlanta, Ga., for U.S.

James R. Barnett, Denis F. Gordon, Washington, D.C., Edward Katze, Atlanta, Ga., for Special Agents Mut. Ben. Ass'n, Inc.

Before KRAVITCH, HATCHETT, and WRIGHT,* Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Tackitt's suit against the defendants claimed (1) a vested right to reimbursement for home nursing expenses at 1977 benefit levels, and (2) arbitrary and capricious action in the approval of reductions in the benefit levels by the government. The district court granted defendants' motion for summary judgment. *Tackitt v. Prudential Insurance Co. of America,* 595 F.Supp. 887 (N.D.Ga.1984). Tackitt timely appeals.

FACTS

Tackitt retired in 1972 after 30 years of service as an FBI agent. He continued his medical insurance by participating in the Special Agents Mutual Benefit Association (SAMBA) Health Benefit Plan. The SAMBA plan is underwritten in part by Prudential.

In December 1972, Tackitt suffered spinal trauma in an automobile accident. Complications of the injury have left him a double leg amputee. He has received home nursing care since 1977 when the first amputation took place. SAMBA fully reimbursed him for those nursing costs until 1982. His home nursing expenses in 1982 approximated $80,000.

The Office of Personnel Management (OPM) asked SAMBA and other health benefit providers to keep all benefit levels constant from 1982 to 1983. Prudential advised SAMBA that a 30% increase in premiums would result if the benefits remained constant. SAMBA developed a package of eight benefit changes to prevent the premium increase. One change was a ceiling on home nursing payments of $2,500 per year. OPM approved the changes for the 1983 benefit plan.

DISCUSSION

1. *Vested Right to Reimbursement*

■ We review summary judgment decisions *de novo. Clemons v. Dougherty County,* 684 F.2d 1365, 1368 (11th Cir. 1982). We resolve all reasonable doubts about the facts in favor of the non-movant. *Warrior Tombigbee Transportation Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983).

Tackitt contends that SAMBA and Prudential have breached their contract with him by not reimbursing him for home nursing expenses at the 1977 level, the year in which he first required the services. Health benefit plans are limited to one year and are subject to annual modification. 5 U.S.C. § 8902. No cases have held that government insurers must continue benefits at a constant level. *See Allen v. United States,* 732 F.2d 107, 108 (8th Cir.1984).

Tackitt contends that the clause limiting the effect of contract modifications is ambiguous. It reads:

The contract may be modified or terminated. However, no such modification or termination will affect adversely any benefit for a covered service received prior to such modification or termination.

■ Tackitt claims that "benefit" is an ambiguous term. Ambiguities in typical

---

* Honorable Eugene A. Wright, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

insurance contracts must be construed against the author of the contract.[1] *Landress Auto Wrecking Co. v. United States Fidelity & Guaranty Co.*, 696 F.2d 1290, 1292 (11th Cir.1983) (applying Florida law). While ambiguous contracts are construed against their authors, meaning should not be added to clear and unambiguous language. *Id.*

■ The district court found the language unambiguous and rejected Tackitt's contention that "benefit" is synonymous with "level of coverage." *Tackitt*, 595 F.Supp. at 891. It found that the clause preserved a right to reimbursement for services received prior to the modification, not a right to reimbursement for future services at the levels allowed prior to the modification. *Id.*

Tackitt cites two state cases in which insureds had a vested right to reimbursement. *Myers v. Kitsap Physicians Service*, 78 Wash.2d 286, 289–90, 474 P.2d 109, 111 (1970) and *Danzig v. Dikman*, 78 App. Div.2d 303, 434 N.Y.S.2d 217, 220–21 (1980), *aff'd*, 53 N.Y.2d 926, 927, 423 N.E.2d 402, 403, 440 N.Y.S.2d 925, 925–26 (1981). Both cases rest on findings of ambiguity in the provisions that modified or limited reimbursement. The modification clause here is not ambiguous. Further, the interpretation of government health insurance contracts is controlled by federal, not state, law. 5 U.S.C. § 8902(m).

Medical insurance contracts should be considered in their entirety, and unambiguous language limiting liability should be given effect. 13 Appleman, *Insurance Law and Practice*, § 7488 at 643 (1976). The summary judgment was proper.

### 2. *Approval of the Benefit Reductions*

■ The Office of Personnel Management is charged with the approval of health benefit plans for federal employees. Federal Employees Health Benefits Act (FEHBA), 5 U.S.C. §§ 8902, 8903. Judicial review of agency actions is regulated by the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). We may set aside agency actions only if they are arbitrary, capricious, or an abuse of discretion.

■ A finding that a decision was arbitrary or capricious requires us to find no rational basis for the decision. *Bowman Transportation, Inc. v. Arkansas-Best Freight Systems*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974). Once we find a rational connection between the evidence and the decision, we must defer to the agency's expertise. *Id.* at 286, 95 S.Ct. at 442; *Home Health Services v. Schweiker*, 683 F.2d 353, 356–57 (11th Cir. 1982).

Tackitt contends that OPM's approval of the benefit changes proposed by SAMBA and Prudential was arbitrary and capricious because of the disproportion between the costs avoided and the burden on those requiring nursing care. Examined separately, the cost savings were $15.01 per member compared with a $75,000 burden on Tackitt. However, home nursing may not be considered alone. SAMBA was faced with a 30.3% premium increase if the existing plan continued. By modifying eight sections of the benefit plan, SAMBA was able to offer an 8.5% decrease in premiums to 20,000 other members.

■ The grant of authority given OPM to approve benefit plans is very broad. *National Federation of Federal Employees v. Devine*, 679 F.2d 907, 912 (D.C.Cir.1981). The OPM must act in a manner consistent with the goals and policies of FEHBA. *Id.* Two of the competing goals of FEHBA are catastrophic coverage and low premiums. *Doe v. Devine*, 703 F.2d 1319, 1328–29 (D.C.Cir.1983). The OPM considered those goals in approving the benefit changes requested by SAMBA and Prudential. The approval was not arbitrary or capricious.

AFFIRMED.

---

1. Defendants contend that OPM's contract interpretation is controlling and that Tackitt was a subscriber to the SAMBA plan, not a party to an insurance contract. Since we reject Tackitt's claim of ambiguity, we need not reach these issues.